PER CURIAM.
¶ 1 Delorean Latrell Bryson appeals a judgment of conviction for first-degree reckless homicide with a dangerous weapon and a circuit court order denying his postconviction motion for a new trial. Bryson argues that the court erred in declining to instruct the jury on the privilege of defense of others. We reject Bryson's arguments and affirm.
BACKGROUND
¶ 2 Bryson was charged with first-degree intentional homicide with a dangerous weapon and being a felon in possession of a firearm, after an altercation in which Bryson shot a cook at a restaurant.[1] According to the testimony at trial, the events leading up to the shooting started when Bryson and four friends visited the restaurant after a night of drinking. Security videos introduced at trial show various confrontations between Bryson's group and others at the restaurant, with Bryson repeatedly exiting the restaurant but then coming back in.
¶ 3 At trial, Bryson testified that the altercation began when he heard another restaurant customer making remarks about Bryson's group. Bryson responded by throwing coffee creamer at the customer. Bryson's friend Oliver sought to defuse the situation by convincing Bryson to leave the restaurant. However, Bryson came back in because the customer appeared to be harassing Bryson's cousin, Schalanda. Oliver again attempted to defuse the situation by pulling Bryson out the door.
¶ 4 Bryson again reentered the restaurant when he saw the cook talking to his cousin. Bryson confronted the cook angrily and tried to convince the cook to come out from behind the counter to fight him. A fight ensued, involving a waitress, Schalanda, Bryson, and the cook. After the fight broke up, Bryson went outside, where he assumed the fight would continue. When the cook did not come outside, Bryson returned to the restaurant and saw the cook holding a coffee pot. Bryson called the cook "a B" and told him, "If you swing that pot, it's me and you for real." Bryson then left the restaurant again, this time with his friends.
¶ 5 At this point, the video recording shows Bryson's cousin Joycelyn reenter the restaurant and begin yelling at the cook, who is standing behind the counter, still holding the coffee pot. Bryson then runs back into the restaurant and, standing between the cook and Joycelyn, points his gun at the cook and shoots him.
¶ 6 At trial, Bryson requested that the circuit court instruct the jury on the privilege of defense of others. Specifically, Bryson argued that he believed that the cook was about to hit Joycelyn with the coffee pot. The court denied Bryson's request for a defense of others instruction.
¶ 7 A jury convicted Bryson of the lesser included offense of first-degree reckless homicide. Bryson filed a postconviction motion for a new trial in which he argued that the circuit court made factual and legal errors when it refused to instruct the jury on the privilege of defense of others.[2] The circuit court denied Bryson's motion for a new trial. Bryson appeals.
DISCUSSION
¶ 8 Bryson argues that the circuit court erred when it declined to instruct the jury on the privilege of defense of others. Bryson contends that the jury should have been instructed using WIS JI-CRIMINAL 830, which incorporates the privilege of defense of others set forth in WIS. STAT . § 939.48(4) (2015-16).[3] This statute provides,
A person is privileged to defend a 3rd person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which the person is privileged to defend himself or herself from real or apparent unlawful interference, provided that the person reasonably believes that the facts are such that the 3rd person would be privileged to act in self-defense and that the person's intervention is necessary for the protection of the 3rd person.
WIS. STAT . § 939.48(4).
¶ 9 Bryson contends that his testimony established that he believed that Joycelyn was in imminent danger of great bodily harm because the cook appeared ready to hit her with the coffee pot. Accordingly, Bryson argued that the jury should be instructed that Bryson was entitled to defend Joycelyn under the same conditions and using the same means that Joycelyn was privileged to use in her own defense.
¶ 10 "Because a defendant asserting the privilege of defense of others is constrained by the principles governing the privilege of self-defense, those principles apply to the analysis of whether a defense-of-others instruction is required." State v. Giminski , 2001 WI App 211, ¶ 12, 247 Wis. 2d 750, 634 N.W.2d 604. A defendant claiming the privilege of self-defense may only use such force as the actor believes is necessary to prevent or stop the harm to the third party. See WIS. STAT . § 939.48(1). A defendant "may not intentionally use force which is intended or likely to cause death or great bodily harm unless the [defendant] reasonably believes that such force is necessary to prevent imminent death or great bodily harm ...." Section 939.48(1). For the purpose of this analysis, the defendant's beliefs must be objectively reasonable. Giminski , 247 Wis. 2d 750, ¶ 13 ("[T]he privilege of defense of others, like the privilege of self-defense, has two components, both of which must be satisfied by a defendant claiming the privilege: (1) subjective-the defendant must have actually believed he or she was acting to prevent or terminate an unlawful interference; and (2) objective-the belief must be reasonable.").
¶ 11 The circuit court denied Bryson's request for a defense of others instruction. The court found that Bryson's cousin[4] had provoked the attack, which negates the privilege. The circuit court also found that Bryson could not have reasonably believed that his cousin had a right to defend herself.
¶ 12 "A circuit court has broad discretion in deciding whether to give a requested jury instruction." State v. Stietz , 2017 WI 58, ¶ 12, 375 Wis. 2d 572, 895 N.W.2d 796. "The circuit court must, however, exercise its discretion in order 'to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence.' " Id. (quoted source omitted). "Whether there are sufficient facts to warrant the [jury instruction] is a question of law that this court decides independently .... " Id. , ¶ 14.
¶ 13 Bryson's first argument is that the circuit court made factual errors in summarizing the testimony at trial. Specifically, the court misquoted Bryson's testimony.[5] The court also disregarded some aspects of Bryson's testimony about the events immediately prior to the shooting. In determining whether to issue a jury instruction, the court must view the evidence in the light most favorable to the defense. See Giminski , 2001 WI App 211 at ¶ 8. We therefore review the court's decision using Bryson's version of events, in which Bryson observed the cook swinging a coffee pot and heard the cook say to Joycelyn, "B, shut up. I've fitting to hit you." Bryson believed that the cook could have "cracked [Joycelyn] right on the head" with the coffee pot.
¶ 14 Nonetheless, even under this version of events, we see no error in the circuit court's decision to decline to issue the defense of others instruction. The key problem for Bryson is that his belief about the need for deadly force had to be reasonable. Id ., ¶ 13. Here, Bryson cannot establish that he reasonably believed that deadly force was necessary to protect Joycelyn from imminent death or great bodily harm. In particular, Bryson testified that he did not know how close the cook was to Joycelyn when Bryson saw the cook swinging the coffee pot, but believed the cook was within "good striking distance" of Joycelyn. However, the video recording shows that the cook remained on the other side of the restaurant's counter and seating area from Joycelyn, and was never close enough to Joycelyn to hit her. Accordingly, to the extent Bryson believed that the cook was about to batter Joycelyn with the coffee pot, Bryson's belief that the cook was within striking distance of Joycelyn was not reasonable.[6]
¶ 15 Bryson also testified that he believed the cook could have thrown the coffee pot at Joycelyn. However, this belief is also not reasonable. The recording shows that by the time Bryson shot the cook, Joycelyn was standing behind Bryson. Thus, there was no longer any reasonable possibility that the cook was going to hit Joycelyn with the coffee pot.[7]
¶ 16 In sum, Bryson could not have reasonably believed that deadly force was necessary to prevent imminent death or great bodily harm to Joycelyn. See Giminski , 247 Wis. 2d 750, ¶ 16 (affirming a circuit court decision denying a defense of others instruction because "we see absolutely nothing that established a basis for any reasonable belief justifying [the defendant's] conduct") (emphasis in original) ). Accordingly, the circuit court properly declined to instruct the jury on the defense of others privilege.
CONCLUSION
¶ 17 For the foregoing reasons, we affirm the judgment of conviction and the order denying Bryson's motion for a new trial.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Bryson was also charged with, and convicted of, being a felon in possession of a firearm. Bryson does not appeal this aspect of his conviction.

Bryson also argued that his DNA surcharges should be vacated. The circuit court granted this aspect of Bryson's motion, and the State does not ask us to revisit this ruling.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Bryson points out that the circuit court incorrectly identified the cousin he was defending as Schalanda Long, rather than Joycelyn Long. Bryson argues that the court's reference to Schalanda means that the court did not properly analyze the applicability of the defense of others privilege. We disagree that this mistake undermines the circuit court's analysis. The court's comments in analyzing the defense of others privilege clearly describe the person who confronted the cook immediately before the shooting. Therefore, the court's confusion over the names of Bryson's two cousins did not affect the court's analysis.

The circuit court thought that the cook told Bryson's cousin, who was also wielding a coffee pot, "You swing that at me, and I'll hit you with the coffee pot." Based on this assumption, the court determined that the cook was not going to hit Bryson's cousin unless she swung at him first. However, Bryson points out that the court misinterpreted his testimony. Instead, the testimony was that, shortly after the altercation between the cook and Bryson, it was Bryson who told the cook, "If you swing that pot, it's me and you for real."

The parties also argue about whether Bryson was entitled to respond to this particular threat with deadly force. See Wis. Stat . § 939.48(1) (a defendant may only use such force as the actor believes is necessary to prevent or stop the harm to the third party). Here, Bryson could only use deadly force if he reasonably believed that Joycelyn was in imminent danger of death or great bodily harm based on the fact that the cook was wielding a coffee pot. Although we question whether such a belief would be reasonable, we need not resolve this issue due to the fact that Joycelyn was not in imminent danger of being hit with the coffee pot at the time of the shooting.

Bryson does not argue that he was afraid that the cook would hit him with the coffee pot, nor do we see any testimony to support such an argument.